UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

AARON JUSTIN HARLOW,

    Plaintiff,

    v.   CAUSE NO. 3:24-CV-957-JD-AZ

WARDEN ENGLISH, et al.,

    Defendants.

OPINION AND ORDER

Aaron Harlow, a prisoner without a lawyer, was ordered to show cause why the initial partial filing fee was not paid. (ECF 7.) Upon review of his response (ECF 8), the case will proceed to screening under 28 U.S.C. § 1915A. He is reminded that he remains obligated to pay the full filing fee over time in accordance with 28 U.S.C. § 1915(b)(2).

As required by 28 U.S.C. § 1915A, the court must screen the complaint (ECF 1) and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Harlow is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

BACKGROUND

Harlow is currently incarcerated at the Hamilton County Jail. His handwritten complaint, which pertains to events occurring at Miami Correctional Facility ("MCF"), is quite difficult to decipher. It can be discerned that he claims to have been attacked by other inmates three times between September 20, 2024, and September 27, 2024. On September 20, he was asleep in his cell and woke to find several inmates who "jumped" him. As they were leaving, the inmates told him "they would be back." He called an emergency number and told someone he identifies as "them" that he had been attacked and needed help, but no one came. He also claims to have contacted Internal Affairs Investigator Johnson (first name unknown) after this incident and told him he was in danger, but Investigator Johnson allegedly did nothing to help him.

On September 23, he was called to the medical unit for an evaluation of his injuries. He states that an unidentified officer was in the medical unit and "witnessed [him] speaking" but did not do anything to help him. He received a "check up" from medical staff and was then sent back to his cell. The following day, he spoke with the "Case Manager of J-Cellhouse," whose name he does not know, and told her he was in danger. She allegedly told him that MCF has no protective custody and there was nothing she could do.

On September 25, he claims to have been assaulted again by inmates who entered his cell while he was sleeping. An unidentified officer performing "count" duties later that day was allegedly aware Harlow was injured but "kept walking." On September 26, an unidentified officer "opened and closed two doors" during evening

2

recreation time. Another group of inmates entered the area and beat him with a metal pipe and stabbed him before fleeing. He states that he was seriously injured and "blood was everywhere," but an officer who was conducting count later that night simply walked by and shook his head.

The following day, Harlow attempted to go to the dining hall but collapsed on the walkway. An officer found him and called an emergency signal. He was later taken to an outside hospital for injuries to his jaw, teeth, ribs, and face. Upon his return from the hospital, he was placed in administrative segregation.

Based on these events, he sues eleven named and unnamed Indiana Department of Correction ("IDOC") employees. In addition to the individuals referenced above, he also sues Warden Brian English for "unsafe conditions," and Grievance Specialist Michael Gapski for preventing him from exhausting his claims through the prison grievance process. He seeks compensatory and punitive damages.

ANALYSIS

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates" and to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005).

Instead, the plaintiff must allege that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). This is a high standard. As the Seventh Circuit has explained:

> To establish deliberate indifference on the part of the defendants sued individually, [plaintiff] needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger.

*Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008) (internal citations and footnote omitted). "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases" is insufficient to allege an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Likewise, making a "mistake" or exercising "poor judgment" does not satisfy the deliberate indifference standard. *Giles v. Tobeck*, 895 F.3d 510, 514 (7th Cir. 2018).

There is no indication from Harlow's complaint that anyone, including him, was aware he was going to be attacked on September 20. "[A]s sad as it may be," this random attack demonstrates the "inherent, as it were the baseline, dangerousness of prison life." *Grieveson*, 538 F.3d at 776. However, after this attack, he claims to have alerted both Investigator Johnson and the unnamed Case Manager that he was in danger and that the inmates who attacked him said they were going to come back. These defendants allegedly did nothing to help him, and he was attacked again two

4

more times. Giving him the inferences to which he is entitled at this stage, he has alleged a plausible failure-to-protect claim against these defendants.[1]

He mentions an unnamed officer who "opened and closed" some doors prior to the final attack, as well as other unnamed officers who allegedly failed to keep his door secured. However, he does not include factual content from which the court could plausibly infer that these officers were "actually aware" of a substantial risk of harm to his safety and "yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski*, 540 F.3d at 639-40. Negligence is not enough to state an Eighth Amendment violation. *Hildreth,* 960 F.3d at 425–26; *see also Giles*, 895 F.3d at 514 (concluding that correctional officer "should not have let out the second-floor inmates until after [plaintiff] returned to his cell" but her "actions did not cross the line from negligently enabling the attack to recklessly condoning it"). Likewise, the court cannot plausibly infer from his minimal allegations that the unidentified officer who was in the medical unit when he was there for treatment was subjectively aware that Harlow was at risk of being attacked again. He merely states that this officer was present and heard him speaking, but it is unknown what information Harlow conveyed to him. He has not alleged a plausible constitutional claim against these individuals.

---

[1] He also sues Investigator Snow (first name unknown), but his allegations against this individual are almost entirely illegible. (ECF 1 at 4.) He appears to state the investigator "knew of injuries," but does not include details about his interactions with this individual, such as when the investigator learned of his injuries and exactly what the investigator did that caused him harm. He has not stated a plausible claim against this individual under federal pleading standards. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010).

As for the Warden, there is no indication this high-ranking official had any personal involvement in these events or was subjectively aware that Harlow was in danger and failed to take steps to protect him. Harlow appears to be trying to hold him responsible because of his position, but there is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009). He has not stated a plausible constitutional claim against the Warden.

He also sues the grievance specialist, but "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause." *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011). Thus, "the alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Id.; see also Daniel v. Cook Cty.*, 833 F.3d 728, 736 (7th Cir. 2016). If the grievance specialist (or someone else) prevented Harlow from exhausting his administrative remedies, this may become relevant at a later stage if any defendant asserts an exhaustion defense. *See Woodford v. Ngo*, 548 U.S. 81, 102 (2006). However, his allegations do not state an independent constitutional claim. *Owens*, 635 F.3d at 954.

It appears he is also asserting a claim for the denial of medical care. To state a claim for the denial of medical care under the Eighth Amendment, a prisoner must allege (1) he had an objectively serious medical need and (2) the defendant acted with deliberate indifference to that medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A medical need is "serious" if it is one that a physician has diagnosed as mandating

6

treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted).

Harlow states that after the first assault, an officer walked by and saw him but did not take him to the medical unit. However, he does not describe the nature of the injuries he suffered in any detail for the court to plausibly infer that he had a serious medical need at that time. It is evident from his allegations that he was seen and evaluated by medical staff a few days after this incident and was released after a brief "check up." The court cannot plausibly infer from what he has alleged that the injuries he suffered were serious, or that the short delay in treatment amounted to deliberate indifference. *See Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (six-day delay in treatment for minor medical issue was not actionable). Merely "putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened . . . that *might* be redressed by the law" is not enough to state a claim under federal pleading standards. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). He will not be permitted to proceed against this officer.

Nevertheless, he alleges that after the third attack on September 26, a different correctional officer walked by and saw him but did nothing to help and instead simply

7

shook his head. Harlow claims there was "blood everywhere," and it can be plausibly inferred that he had visible injuries, because he later received treatment at an outside hospital for serious injuries to his teeth, jaw, and face. The fact that the officer allegedly "shook his head" suggests he did in fact see Harlow and turned a blind eye to his need for medical treatment. Giving Harlow the inferences to which he is entitled, he alleges a plausible denial of medical care claim against this officer.

As outlined above, Harlow is being permitted to proceed against two unnamed defendants—the Case Manager in J-Cellhouse working on September 20, 2024 (herein "Case Worker Jane Doe") and the correctional officer who performed count duties in the J-Cellhouse the night of September 26, 2024 (herein "Officer John Doe").[2] It is permissible to sue a "placeholder defendant" in federal court, but as a practical matter unnamed defendants cannot be served with process. *See Rodriguez v. McCloughen*, 49 F.4th 1120, 1121 (7th Cir. 2022). These defendants must be identified and served within the two-year statute of limitations period and the deadline specified in Federal Rule of Civil Procedure 4(m). *Id.* The court has an obligation to assist Harlow in trying to identify and serve these defendants. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996); *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990). Therefore, the court will keep the Warden in the case as a defendant for the sole purpose of identifying these

---

[2] Harlow refers to this defendant as the "CO that worked J & did night count 9-26-23," but it is evident that the year listed was a typographical error. For ease of reference, the court refers to this officer as Officer John Doe.

defendants. The court will order him to provide the names of these individuals, to the extent he is able, as outlined below.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Case Manager Jane Doe and Internal Affairs Investigator Johnson (first name unknown) in their personal capacity for money damages for failing to protect him from being attacked by other inmates in September 2024 in violation of the Eighth Amendment;

(2) GRANTS the plaintiff leave to proceed against Officer John Doe in his personal capacity for money damages for failing to obtain medical care for him after he was attacked by other inmates on or about September 26, 2024, in violation of the Eighth Amendment;

(3) GRANTS the plaintiff leave to proceed against Warden Brian English in his official capacity for the sole purpose of identifying the two Doe defendants;

(4) DISMISSES all other claims;

(5) DISMISSES "CO working J-Pod Control," "Medical Investigator," "Snow," "Receiver," "CO working J-cell-house night count on 9-25-2024," "CO working J-cell-house night count on 9-20-2024," and Michael Gapski as defendants;

(6) DIRECTS the clerk to update the docket to redesignate the defendant referred to as "CO that worked J & did night count 9-26-23" as "Officer John Doe" and the defendant referred to as "Counsler J-Cell-house" as "Case Worker Jane Doe";

(7) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on)

9

the Warden of Miami Correctional Facility and Internal Affairs Investigator Johnson (first name unknown) at the Indiana Department of Correction and to send them a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(8) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(9) WAIVES the Warden's obligation to answer the complaint and ORDERS the Warden to provide on or before **May 28, 2025**, the name of the female Case Worker working in J-cellhouse on September 20, 2024, and the name of the male correctional officer who performed "night count" duties in the J-cellhouse on September 26, 2024, or to file a notice by the above date explaining why the names of these individuals cannot be provided; and

(10) ORDERS Internal Affairs Investigator Johnson to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on March 31, 2025

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT