UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AARON JUSTIN HARLOW,<br><br>Plaintiff,<br><br>v.<br><br>NEIL JOHNSON, et al.,<br><br>Defendants. | CAUSE NO. 3:24-cv-957-AZ |

OPINION AND ORDER

Aaron Justin Harlow, a prisoner without a lawyer, is proceeding in this case on two substantive claims. First, he is proceeding against Neil Johnson and Aubrey Neuzerling in their personal capacities for money damages for failing to protect him after he was attacked by other inmates multiple times in September 2024 in violation of the Eighth Amendment. ECF 9 at 9. Second, he is proceeding against Roberto Torres in his personal capacity for money damages for failing to obtain medical care for him after the attacks in violation of the Eighth Amendment. *Id.*

More specifically, Harlow claims that while he was an inmate at Miami Correctional Facility (MCF) he was attacked by other inmates on three separate occasions between September 20, 2024, and September 27, 2024. ECF 1. After he was first attacked, he says he contacted Neil Johnson, an Internal Affairs Investigator at the prison, to tell him he was in danger, but Investigator Johnson allegedly did nothing. The following day, Harlow says he spoke with Case Manager Aubrey Neuzerling and repeated that he was in danger. In response, he says she told him that the prison did not

have protective custody and there was nothing he could do. Then, on September 25 and 26, Harlow says he was attacked again by inmates when he was stabbed and beaten with a metal pipe. Harlow says that Officer Robert Torres walked by him after that attack, saw MHarlow was bloodied and seriously injured, but continued to walk by and simply shook his head. The following day, Harlow was taken to an outside hospital for injuries to his jaw, teeth, ribs, and face. After he was discharged from the hospital, he was placed in administrative segregation upon his return to MCF. *See* ECF 32 at ¶¶ 7-12.

Harlow filed two grievances which are relevant to this case, one of which Defendants claim was not received but which Harlow attached to his response to the motion. *See* ECF 35-2 at 12-13. First, on October 8, 2024, Harlow submitted a handwritten grievance. ECF 30-7 at 3. He furthermore states that he followed up multiple times in writing with the Grievance Specialist and Warden about his grievance which had not been processed, returned to him, or responded to.

On January 2, 2025, that grievance was returned to Harlow. The written response from Grievance Specialist Gapski stated:

> I am sorry. But I cannot determine what is being described in this grievance. But I can conclude is that you were requesting [protective custody] and/or a transfer that is a classification issue which is not grievable. This is a Classification issue which is not allowed to be grieved per policy. This is best handled through the Classification Department or your Caseworker. Policy #00-02-301 lists examples of non-grievable issues and #5 reads: "Classification actions or decisions which include loss of a job, change in security level, facility transfers, and bed moves (a separate classification appeals process is in place for this purpose).

ECF 30-7 at 1. The grievance was thus marked as "unprocessed" and returned to Harlow. *Id.* Second, on January 7, 2025 Harlow submitted another grievance which while also difficult to read entirely, clearly relates to the attacks he suffered from September 20, 2024 through September 26, 2024, his subsequent hospitalization and that staff ignored the fact he was attacked and failed to protect him. ECF 35-2 at 12. There is nothing in the record before the Court from any party indicating that January 7, 2025 grievance was responded to by the prison in any fashion or that Harlow appealed any response or followed up after January 7, 2025.

The parties consented to magistrate judge jurisdiction. ECF 27. All three Defendants filed a motion for summary judgment, arguing Harlow did not exhaust his administrative remedies before filing this lawsuit. ECF 30. Harlow filed a response, and Defendants filed a reply. ECF 35, 38. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing summary judgment motion may not rely merely on allegations or denials in its own pleading but rather must "marshal and

present the court with the evidence [he] contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted *must* be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) (emphasis added). In other words, exhaustion of administrative remedies is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). "A purpose of the exhaustion requirement is to allow prison officials time and opportunity to respond to complaints internally before an inmate initiates litigation." *Dye v. Kingston*, 130 F. App'x 52, 55 (7th Cir. 2005).

"Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "Failure to do what the [prison] requires bars, and does not just postpone, suit under § 1983." *Id.* at 1024. This "mandatory language means a court may not excuse a failure to exhaust" even under "special circumstances." *Ross v. Blake*, 578 U.S. 632, 639 (2016). This may appear harsh,

but federal courts "must honor Congress's choice" in how the statutes governing lawsuits challenging prison conditions are written. *Id.* at 640.

At the same time, "[p]rison officials may not take unfair advantage of the exhaustion requirement[.]" *Dole*, 438 F.3d at 809. A prisoner need only exhaust administrative remedies that are "actually available" to him. *Smallwood v. Williams,* 59 F.4th 306, 313 (7th Cir. 2023). For example, "a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809 (quoting *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002)). "[W]hether a remedy is available to exhaust is a fact-specific inquiry." *Smallwood*, 59 F.4th at 314.

The Seventh Circuit previously laid out the procedure that courts should follow when faced with contested questions of whether administrative remedies have been sufficiently exhausted:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed

> of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). More recently, the Supreme Court held that where questions of exhaustion are "intertwined" with the underlying merits of the substantive case or claim being brought, then the question of exhaustion cannot be resolved by a judge through a *Pavey* hearing and instead must be tried before a jury. *Perttu v. Richards*, 605 U.S. 460, 467 (2025). In that regard, the Supreme Court overruled the holding of *Pavey* which allowed a judge to determine exhaustion in all instances. *Id.* The Seventh Circuit had previously recognized the tension between motions for summary judgment and resolving questions of failure to exhaust in these types of cases:

> The logic of *Pavey* is in some tension with a decision to combine the resolution of facts pertinent to exhaustion with the decision whether there are facts warranting a trial. *Pavey's* central holding is that exhaustion is not a question for the jury at trial, but instead is a preliminary issue for the court. Summary judgment, in contrast, is designed to weed out cases that must to go to a trier of fact from those that present no such issues. Separation of the exhaustion inquiry from summary judgment will thus promote clear decisionmaking.

*Wagoner v. Lemmon*, 778 F.3d 586, 591–92 (7th Cir. 2015). In other words, summary judgment can only be granted when there are no disputed material issues of fact, but whether there are disputed material facts is separate a question that the Court must separately decide, and resolution of that question can make summary judgment inappropriate. *See Perttu*, 605 U.S. 460, 469 (2025) ("PLRA exhaustion is an 'affirmative defense' subject to 'the usual practice under the Federal Rules.'") (quoting *Jones v. Bock*, 549 U.S. 199, 212 (2007)); *see also Burns v. Polk*, -- F.4th --, 2026 WL 2409723, at *5 (7th Cir.

Aug. 18, 2026) (reversing summary judgment on exhaustion issue because a "swearing contest requires an evidentiary hearing to resolve") (quoting *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014)).

With this legal foundation established, the Court will move on to address the substantive issues presented by Defendants' motion which relate solely to whether Harlow exhausted his administrative remedies.

First, the Court finds that the exhaustion issue is not factually intertwined with the underlying facts of Harlow's claims, so the question of whether Harlow exhausted his administrative remedies can be decided by the Court rather than a jury. *See Breyley v. Fuchs*, 156 F.4th 845, 849 (7th Cir. 2025) (noting that before holding an evidentiary hearing on an exhaustion dispute or resolving summary judgment, the district court should consider if the issue of exhaustion is intertwined with the merits of the inmate's claims under *Perttu*)**.** So now the Court analyzes whether based on this record it can resolve the issue on summary judgment or if factual issues require a *Pavey* hearing.

Defendants argue that Harlow failed to exhaust his administrative remedies with something of a divide and conquer strategy that seeks to dissect Harlow's claims and grievances into different buckets. First, they argue that any claim against Johnson and Neuzerling categorically concerns a request to be transferred or placed in protective custody and therefore is controlled by MCF's "Adult Classification Policy and Administrative Procedures" which "establish an organized classification system for receiving, processing and assigning incarcerated adults committed to [the Indiana Department of Corrections," ECF 32 at ¶ 15, rather than by the general grievance policy.

And because Harlow did not submit a Classification Appeal, he did not exhaust his administrative remedies as to his claims against Johnson and Neuzerling. Second, they argue that the claim against Officer Torres was not properly exhausted because it was not legibly referenced in the October 8, 2024 grievance, and the January 7, 2025 grievance was untimely and did not sufficiently identify Officer Torres by name. As discussed below, several of Defendants' arguments are misplaced and the record before the Court is far too muddled and ambiguous to be resolved on the papers. An evidentiary hearing will be necessary to determine whether or not Harlow exhausted his administrative remedies prior to filing suit.

On October 8, 2024, Harlow filed a grievance relating to the September 2024 assaults and his subsequent hospitalization. ECF 35-2 at 11. This grievance was not responded to in a timely fashion in accordance with the prison's policy, which generally requires grievances be responded to within 15 business days of receipt. ECF 30-5 at 10 ("the Offender Grievance Specialist has fifteen (15) business days from the date that the grievance is received to complete an investigation and provide a response to the offender, unless the time has been extended."). In the case of improperly submitted grievances, if a grievance does not conform to the rules, it is supposed to be returned to the prisoner on a specific form within one business day with an explanation of the problem. ECF 30-5 at 10 ("If the Offender Grievance Specialist determines from a review of the grievance form that it does not meet the requirements of this policy and administrative procedure and there is no good cause shown, the Offender Grievance Specialist shall return the grievance form within one (1) business day to the offender

with an explanation as to why the form was returned and how it may be corrected."). Likewise, grievances made about "non-grievable issues" are supposed to be returned on a specific form within two business days. ECF 30-5 at 4 ("When an offender submits a grievance concerning a non-grievable issue, such as listed above, staff shall complete State Form 45475, "Return of Offender Grievance," retain copies on file according to record retention guidelines, and return both (the documented grievance and return of offender grievance form) to the offender within two (2) business days."). Under the terms of the grievance policy, these deadlines can be extended in writing by prison officials. ECF 30-5 at 11 ("If there is a delay in investigating the offender's grievance issues, the Offender Grievance Specialist may seek approval for a time extension with the request submitted to the Warden/designee, and with a responding email for file noting the approval/disapproval for the extension. The Offender Grievance Specialist shall notify the offender in writing of the number of days of the extension."). The policy also permits an offender to appeal a grievance "as though the grievance had been denied" if an inmate does not receive a response (or notification of an extension) within 20 business days "of being investigated." ECF 30-5 at 11.

Defendants' motion and accompanying briefs do not mention the date Harlow's October 8, 2024 grievance was responded to or event suggest that there were any written extensions. The documents submitted by both parties indicate that the grievance submitted on October 8, 2024 was not formally rejected or accepted on the merits within the specified time frames, but was returned to Harlow roughly three months later, on January 2, 2025. Alongside the return form, the prison provided an

explanation that his grievance was difficult to read but that to the extent it was requesting a change in housing, that needed to be handled through the Adult Classification Process. ECF 30-7 at 1-2. Thus, while this was not accomplished within the one, two or 15 day windows specified by the prison's policy, his grievance was eventually reviewed and returned to him with an explanation.

The complicating problem is, this response was not provided to Harlow until *after* he filed his lawsuit on November 27, 2024. *See* ECF 1. The record further demonstrates that Harlow attempted to follow up on his original October 8 grievance multiple times prior to filing suit. He attached to his original complaint and opposition to summary judgment numerous written statements from him which purport to be attempts to receive a response to his October 8 grievance or form by which to file an appeal prior to filing this lawsuit.

First, he attached to his original complaint and his opposition to summary judgment, a notice directed to Grievance Specialist Gapski dated November 1, 2024 in which he states he has not received a case number or receipt for his grievance. ECF 35-2 at 3. Second, Harlow includes two letters directed to Grievance Specialist Gapski and Warden English dated November 10, 2024, in which he repeats that he has failed to receive any response to his grievance and therefore lacks the ability to appeal. *Id.* at 5-6. Third, he further attaches a sworn affidavit drafted on November 21, 2024, in which he followed up again in writing, referencing his prior attempts to follow up on November 1 and 10. *Id.* at 4. In this letter, Harlow specifically requests that he be provided with the necessary forms to file an appeal. *Id.*; *see also* ECF 30-5 at 12 ("If the offender is

dissatisfied with the grievance response, he/she may appeal the response by completing the appropriate sections of State Form 45473, 'Grievance Appeal.'"). Fourth, Harlow has included another completed grievance form dated November 12, 2024 which appears to be his attempt at appealing his October 8 grievance even though it is not on the proper form (Harlow filled out State Form 45471 rather than the State Form 45473). ECF 35-2 at 7. In it, Harlow directs his grievance at the Grievance Specialist and Warden English, noting that his October 8 grievance should have been responded to by October 24 and despite his efforts at following up in writing, was never responded to. *Id.*

Fifth and finally, Harlow attaches a December 4, 2024 letter he received from Charlene A. Burkett, the Director of the Indiana Department of Corrections' Ombudsman Bureau. *Id.* at 8. In the letter, which appears to be a response to something that was sent by Harlow, Burkett informed Harlow of the need to "fully complete all levels of the Grievance Process before contacting the Bureau" and reminding him that pursuant to the policy, if a grievance "is not responded to within twenty business days" he could "proceed with the Appeal as if filed." *Id.* Accordingly, and because the grievance appeals process appeared to be incomplete, Burkett found "no reason to review this matter any further" and closed the Ombudsman Bureau complaint apparently filed by Harlow. *Id.*

Harlow further responds to Defendants by pointing that by the time he filed his October 8 grievance he was already in administrative segregation (a different

classification) after being discharged from the hospital so his request was not per se related to classification. ECF 35-1 at 4.

Tellingly, in their reply brief, Defendants do not address any of these five written documents that were dated between the time of Harlow's original October 8 grievance and when he filed this lawsuit on November 27.

Based on this record, it is not apparent to the Court why it took so long for the prison to respond to the October 8 grievance or whether it claims to have never received any of Harlow's subsequent writings. Again, Defendants' papers make no reference to the fact that the October 8 grievance was not responded to until January 2, 2025. Instead, Defendants rely solely on the fact that Harlow's October 8 grievance was eventually returned to him as unprocessed (because it was eventually determined to relate to something that should not be handled through the grievance process) to demonstrate that Harlow failed to exhaust his administrative remedies. And while the Court agrees with Defendants that the October 8 grievance is far from perfectly legible, it makes reference to multiple attacks from gang members, conversations Harlow says he had with prison staff about being in fear, and requesting medical care and some disciplinary action against staff who failed to protect or help him. *See* ECF 35-2 at 11. While a transfer to a different cell or protective custody may have been part of Harlow's request, that was certainly not the only thing mentioned in the grievance.

Defendants then focus on a January 7, 2025 grievance, which they claim to have never received but even if ever received was inadequate in their view. Harlow responds that he submitted the January 7, 2025 grievance after his October 8, 2024 grievance was

returned to him as unprocessed. And while the photocopy of the January 7 grievance is also difficult to read, it makes clear it is grieving regarding a failure to protect and provide medical care relating to the attacks on September 20-26 and Harlow's subsequent hospitalization outside the facility on September 27, 2024. ECF 35-2 at 12. Defendants claim this grievance was never received, ECF 38 at 2-3, but at this stage of the proceedings, the Court must view the evidence in the light most favorable to Harlow because he is the nonmoving party, *Heft*, 351 F.3d at 282, which means the Court will accept as true for purposes of this motion that Harlow submitted the grievance dated January 7, 2025.

Defendants next argue that if this grievance was received, it was untimely because it was not filed within 10 days of the original incident on September 26, 2024. *See* ECF 38 at 3. This argument makes little sense given this record, and the fact that Harlow's original grievance was not returned to him until January 2, 2025. Pursuant to the grievance policy, Harlow was required to resubmit the grievance within five business days of it being returned to him. ECF 30-5 at 10 ("It shall be the responsibility of the offender to make the necessary revisions to the grievance form and to return the revised form to the Offender Grievance Specialist within five (5) business days from the date that it is returned to the offender."). January 7, 2025, was within 5 business days of January 2, 2025, so the January 7 grievance would not be untimely under the policy.

Next, Defendants argue that this grievance fails to identify Officer Torres by name and thus cannot be evidence of exhausting any claims against Officer Torres. ECF 38 at 2-3. But in doing so, Defendants do not cite any part of the grievance procedure

which requires that staff members be identified by name. *Id.* And the Court's review of the procedures in place at MCF at the time submitted by Defendants do not indicate as much. Instead, a grievance need only "meet the following standards:"

> 1. Each part of the form shall be completed;
> 2. It shall be written legibly;
> 3. It shall avoid the use of legal terminology;
> 4. It shall raise the same issue that the offender raised in trying to get the informal resolution and document the attempts at informal resolution;
> 5. It shall relate to only one event or issue;
> 6. It shall be signed, dated, and submitted by an offender on his or her own behalf, although it can be written by another offender or staff member if the offender is unable to do so due to a physical, language, or other problem;
> 7. It shall explain how the situation or incident affects the offender; and,
> 8. The offender shall suggest appropriate relief or remedy.

ECF 30-5 at 9. As such, this argument also misses the mark. Defendants argue that Grievance Specialist Gapski has reviewed the prison's files and "determined" for himself "that Mr. Harlow failed to exhaust his available administrative remedies with respect to his claim against Officer Torres," because the grievance does not mention Officer Torres by name. ECF 31 at 7. But Gapski's own determination is not controlling. It is for the Court (or a jury) to determine whether a prisoner has exhausted their administrative remedies. And here, a failure to identify Officer Torres by name in a grievance is not on its own a valid basis to say the grievance was unexhausted because the policy does not require the specific accurate identification of the staff members involved.

In the end, however, almost all of this is irrelevant to the issue before the Court. The real problem with the January 7, 2025 grievance are issues the parties fail to raise but which are obvious to the Court on this record. Harlow filed this lawsuit on November 27, 2024, *see* ECF 1, or approximately 6 weeks before the prison responded on January 2, 2025 and returned his grievance for its illegibility and for seeking relief which could only be obtained through the Classification Appeals process. Administrative remedies must be exhausted *prior* to filing a lawsuit. *Cleveland v. Warden*, 2019 WL 4597333, at *2 (N.D. Ind. Sept. 23, 2019) ("A suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.") (quoting *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999)). But at the same time, prison officials "[p]rison officials may not take unfair advantage of the exhaustion requirement," *Dole*, 438 F.3d 809, or engage in gamesmanship.

The Seventh Circuit has recognized that where a prison does not respond to a proper grievance, the supposed administrative remedy can become legally "unavailable." *Dole*, 438 F.3d at 809 (quoting *Lewis*, 300 F.3d at 833). Failing to respond to a grievance for nearly two months (despite an inmate's apparent repeated written follow up) but then responding approximately a month *after* an inmate files a lawsuit then claiming a grievance was properly addressed strikes the Court as potentially taking unfair advantage of the exhaustion requirement. This is especially true if, as Harlow asserts in his sworn response and in his writings from November 2024, he was

prevented from filing an appeal because he was not given the proper (and required) form to file. *See Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (holding that a prison's failure to provide inmates with necessary forms to file a grievance renders the administrative remedies unavailable). At a minimum, this fact, alongside the document evidence of Harlow's attempts to follow up on his grievance in writing in November 2024 prior to filing suit creates an issue of fact relating to exhaustion that cannot be resolved on paper. This must be sorted out with an evidentiary hearing.

For these reasons, the Court DENIES Defendants' motion for summary judgment (ECF 30) for failure to exhaust because the factual issues relating to exhaustion are fairly disputed by the evidentiary record and cannot be resolved on paper. The Court will set this matter for a *Pavey* evidentiary hearing where it will receive evidence from Harlow and Defendants relating to exhaustion issues through documentary evidence and live testimony. The Court can decide this issue through an evidentiary hearing (effectively a bench trial) because the issue of exhaustion is not intertwined with the underlying facts of Harlow's claims against Defendants for failing to protect him from violence or provide him with medical care. The date for this hearing will be coordinated with the facility at which Harlow is incarcerated at and will be set by separate order.

SO ORDERED on this 29th day of September 2026.

s/ *Abizer Zanzi*
MAGISTRATE JUDGE ABIZER ZANZI
UNITED STATES DISTRICT COURT